## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROGER D. WOOLEYHAN, et al.        :      CIVIL ACTION

                 :

         v.               :

                 :      NO. 10-0153

CAPE HENLOPEN BOARD OF EDUCATION,    :
et al.                                    :

### MEMORANDUM ON PARTIAL DISMISSAL

**Baylson, J.**                                               **June 28, 2010**

This action arises out of Defendant Cape Henlopen High School teacher Amanda R. Jester's accusation that Plaintiff Roger D. Wooleyhan ("Roger, Jr."), a student at the school, offensively touched her. Roger, Jr. and his parents, Roger, Sr. and Elizabeth Wooleyhan ("Mr. and Mrs. Wooleyhan," collectively with Roger, Jr., "Wooleyhans"), bring several claims against Jester and various other public officials for their handling of the accusation.

Jester only seeks to dismiss the following claims as to her: (1) use of excessive force, in violation of 42 U.S.C. § 1983 (Count IV), (2) establishment and maintenance of a policy which directly caused constitutional harm, in violation of 42 U.S.C. § 1983 (Count V), (3) intentional infliction of emotional distress (Count VI), and (4) abuse of process (Count X).[1] For the reasons discussed below, Jester's Motion to Dismiss will be granted in part and denied in part.

---

[1] In addition to the four Counts Jester has moved to dismiss, the Wooleyhans' Complaint brings the following claims against multiple Defendants, including Jester: (1) malicious prosecution (Counts I and VIII), (2) unlawful detention (Count II), (3) failure to provide procedural due process (Count III), (4) defamation (Count VII), and (5) false imprisonment (Count IX). (Compl. ¶¶ 41–57, 64 86.)

1

## I.      Factual and Procedural Background

According to the Complaint, the underlying facts are as follows:  Around 9:30 a.m. on

October 24, 2008, Jester physically separated Roger, Jr. from another Cape Henlopen student,

Natalie Pineda.  (Compl. ¶ 27.)  Jester reported to the school's Student Resource Officer ("SRO")

that during her effort to separate the students, Roger, Jr. had offensively touched her.  (Compl. ¶

1.)  Later that day, the SRO and Student Service Coordinator ("SSC") removed Roger, Jr. from

his class and arrested him, and the SRO took Roger, Jr. to the Troop 7 Police Station.  (Compl. ¶

28.)  Upon being transported back to school, Roger was informed by the SSC that he had been

suspended for three days.  (Compl. ¶ 30.)  According to Mrs. Wooleyhan, the SRO contacted her

that day and informed her that Jester's accusations of offensive touching were truthful, and that a

school surveillance camera had captured the incident.  (Compl. ¶ 31.)

On October 27, 2010, Mr. and Mrs. Wooleyhan met with the school's assistant principal,

Dianne Mrazeck, who allegedly informed them that the surveillance video showed Roger, Jr.

elbowing Jester in the breast.  (Compl. ¶ 32.)  Mrs. and Mrs. Wooleyhan allege that Mrazeck

would not allow them to view the video, citing school policy.  (Compl. ¶ 32.)  At a subsequent

meeting with the school's principal, John Yore, Mr. and Mrs. Wooleyhan viewed the video and

concluded that it did not show their son touching Jester.  (Compl. ¶¶ 36.)  They requested that the

criminal charges against their son be dropped and that his record be expunged.  (Compl. ¶¶ 37.)

In response, Yore allegedly suggested that Roger, Jr. apologize to Jester.  (Compl. ¶ 37.)

Criminal proceedings against Roger, Jr. progressed, and on February 3, 2009, Jester testified as a

state witness in a trial against him.  (Compl. ¶ 38.)  Roger, Jr. was found not guilty on all

charges.  (Compl. ¶ 38.)

On February 24, 2010, the Wooleyhans filed this civil action against Jester and other public officials. (Docket No. 1.) On April 20, 2010, Jester filed the pending Motion to Dismiss. (Docket No. 19.)

## II.      Legal Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). Courts must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which required a heightened degree of fact pleading in an antitrust case, "expounded the pleading standard for 'all civil actions.'" 129 S. Ct. at 1953.

Iqbal explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without

3

some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she

provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly,

550 U.S. at 556 n.3)).  Accordingly, to survive a motion to dismiss, a plaintiff must plead

"factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

**III.     Discussion**

Jester seeks to dismiss the Wooleyhans' claims that she (A) used excessive force, and

established and maintained a policy which cause Roger, Jr. constitutional harm, (B) intentionally

inflicted emotional distress upon the Wooleyhans, and (C) engaged in abuse of process.  Each

claim or set of claims will be addressed in turn.

**A.      Excessive Force, and Establishment and Maintenance of a Constitutionally
Harmful Policy (Counts IV and V)**

In Counts IV and V of the Complaint, the Wooleyhans allege that the SRO violated 42

U.S.C. § 1983 by using excessive force when detaining and arresting Roger, Jr. (Compl. ¶¶ 59-

60), and that the Cape Henlopen School District, School Board, and police violated 42 U.S.C.

§ 1983 by acting with deliberate indifference to the consequence of its policies, and establishing

and maintaining a policy that constitutionally harmed Roger. Jr (Compl. ¶ 62).  Jester contends

that neither Count purports to be directed at her or references any of her alleged conduct.  (Mot.

to Dismiss 11.)  The Wooleyhans have conceded that the Counts in question are not facially

directed at Jester.  (Resp. 13.)  Because Counts IV and V, unlike all the other Counts in the

Complaint, do not reference Jester, the Court has concluded that they are not directed at Jester.

Accordingly, Jester's Motion to Dismiss is denied as moot, insofar as it seeks to dismiss Counts IV and V.

**B.      Intentional Infliction of Emotional Distress (Count VI)**

In Count VI, the Wooleyhans only allege that Jester is liable to them for intentional infliction of emotional distress ("IIED") because her "actions and conduct" were "outrageous and reflected a conscious indifference to the decision's foreseeable effect upon all Plaintiffs," and "caused [the Wooleyhans] foreseeable and severe emotional distress." (Compl. ¶¶ 65, 67.)

**1.      Parties' Contentions**

In seeking to dismiss the Wooleyhans' IIED claim, Jester first argues that the only supporting allegations in fact "sound in defamation," because "the only specific conduct alleged as to [her] is that she falsely accused Roger, Jr. of offensive touching." (Mot. to Dismiss 8.). Jester further contends that in such a case, Delaware law does not permit plaintiffs to bring an independent IIED claim. (Mot. to Dismiss 7–8.) In response, the Wooleyhans aver that a false accusation can support an IIED claim, independent of a defamation claim, and that subjecting an innocent plaintiff to a false accusation satisfies the "outrageous conduct" element of an IIED claim. (Resp. 5.)

Next, Jester argues that the Wooleyhans have failed to articulate sufficient grounds entitling them to relief on their IIED claim because the Wooleyhans only state in conclusory fashion that her conduct caused them "foreseeable and severe emotional distress." (Mot. to Dismiss 9.) According to Jester, by not providing detail as to the nature or severity of the emotional distress suffered, the Wooleyhans have failed to demonstrate that they are entitled to relief for IIED. (Mot. to Dismiss 8-9.) In response, the Wooleyhans aver that their IIED claim is

5

grounded in a chain of events, and that Jester's physical separation of the children and false accusation led to Roger, Jr.'s arrest, suspension, and malicious prosecution. (Resp. 7.) The Wooleyhans further argue that "the ordeal, taken together as a whole, from inception to culmination was undertaken due to [Jester's] insistence on pursuing false allegations." (Resp. 7.)

As for Mr. and Mrs. Wooleyhans' IIED claim, in particular, Jester contends that it should be dismissed because Delaware law requires that third parties allege either that the conduct in question was directed at them, or that they were present at the time of the conduct, but that the Wooleyhans' have not made either allegation.. (Mot. to Dismiss 7.) Mr. and Mrs. Wooleyhan respond that they have sufficiently stated a third-party IIED claim, because their case is analogizable to two past Delaware cases that allowed parents to bring third–party IIED claims against school officials. (Resp. 8–9.) Jester asserts that these cases are distinguishable because one involved conduct directed at the parents, and the other did not want to foreclose "future explor[ation]" of "the [s]chool [d]efendants' actions towards the parents, independent of action taken towards their daughter." (Reply 7–8.)

Lastly, Jester argues that she is entitled to absolute privilege, because her alleged actions were undertaken "in the course of judicial proceedings." (Reply 9.) According to Jester, this privilege extends to any statements "pertinent to, and made in the course of, a judicial proceeding." (Reply 10.).

## 2.    Analysis

The Court will address in turn Jester's arguments (a) that the Wooleyhans cannot bring an

IIED claim independent of a defamation claim, (b) that they fail to sufficiently plead an IIED

claim, and (c) that Mr. and Mrs. Wooleyhan cannot recover as third–parties.[2]

### a.    IIED Claim Independent of Defamation

In Barker v. Huang, the Supreme Court of Delaware held that "an independent action for

intentional infliction of emotional distress does not lie where . . . the gravamen of the complaint

sounds in defamation." 610 A.3d 1341, 1351 (Del. 1992); see also Bloss v. Kershner, No.

03C–04–282, 2000 WL 303342, at *6 (Del. Super. Ct. Mar. 8, 2000) (applying Barker in holding

that the plaintiff's IIED claim "cannot survive since it is based on the same set of facts as the

defamation claim"). The Barker Court explained that finding to the contrary risked "swallowing

up and engulfing the whole law of public defamation." Id. (internal quotation marks omitted).

This case falls squarely within Barker, because the Wooleyhans have not alleged facts

supporting a IIED claim that do not relate to defamation. The Complaint only alleges that Jester

physically separated the students, falsely accused Roger, Jr. of offensively touching her, leading

to his arrest and subsequent criminal proceedings, and testified against him as a state witness.

(Compl. ¶¶ 27 38.) Although the Wooleyhans do not specify the factual basis underlying their

IIED claim and only generally allude to Jester's "actions and conduct" (Compl. ¶ 65), they could

---

[2] Jester also contends that the IIED claims against her should be dismissed because she undertook her alleged actions "in the course of judicial proceedings, and thus are absolutely privileged. (Mot. to Dismiss 9.) Although Delaware courts have clarified that "in the course of judicial proceedings" is "not narrowly confined to intra courtroom events, but extends to all communications appurtenant thereto such as . . . the drafting of pleadings, and the taking of depositions or affidavits ex parte, Nix v. Sawyer, 466 A.2d 407, 410 (Del. Super. Ct. 1983), the Court need not determine at this juncture whether a school teacher, by bringing to school authorities accusations that a student engaged in criminal behavior, is entitled to absolute privilege. As the Court will explain, other factors require the dismissal of the Wooleyhans' IIED claims. Moreover, the Wooleyhans did not have the opportunity to respond to Jester's argument, given that she raised this argument for the first time in her reply brief

only attempt to attach liability to Jester for her allegedly false accusation that Roger, Jr. offensively touched her, and her subsequent testimony to that effect, which are the same acts that give rise the Wooleyhans' defamation claim in Count VII (see Compl.¶ 69). This allegation attempts to attach liability to the same alleged acts that give rise to the Wooleyhans' defamation claim in Count II.

A contrary result is not warranted by either of the cases relied upon by the Wooleyhans. The first case, Mikell v. School Admin. Unit No. 33, 972 A.2d 1050 (N.H. 2009), is a New Hampshire case that does not speak to appropriate IIED standards under Delaware law. In addition, neither Mikell nor the second case, Miller v. Spicer, 822 F. Supp. 158 (D. Del. 1993), appear to involve a defamation claim, and therefore do not discuss whether plaintiffs may use the same underlying facts to support both defamation and IIED claims.

**b.     Sufficiency of the IIED Pleadings**

The Complaint only alleges the following with respect to the Wooleyhans' IIED claim against Jester: "The actions and conduct of . . . Jester . . . were outrageous and reflected a conscious indifference to the decision's foreseeable effect upon [the Wooleyhans]," and "caused [them] foreseeable and severe emotional distress." (Compl. ¶¶ 65, 67.) Although these allegations, standing alone, merely recite the IIED standard under Delaware law and conclude that Jester's conduct satisfies this standard, the earlier paragraphs in the Complaint detail Jester's alleged conduct, including her physical separation of the students, and accusation that Roger, Jr. offensively touched her, which lead to his arrest and trial for offensive touching. (Compl. ¶¶ 27–38.) At this early stage in the proceedings, prior to discovery, this Court will not dismiss Wooleyhans' IIED claim for failure to sufficiently plead IIED.

### c.      Mr. and Mrs. Wooleyhans' Third Party IIED Claims

"It is well-established that Delaware courts apply § 46 of the Restatement (Second) of

Torts in analyzing claims for intentional infliction of emotional distress." <u>Cooper v. Bd. of Ed.</u>

<u>of Red Clay Consol. Sch. Dist.</u>, 2009 WL 3022129, at *1 (Del. Super. Ct. Sept. 16, 2009); <u>see</u>

<u>also</u> <u>Mattern v. Hudson</u>, 532 A.2d. 85, 85 (Del. Super. Ct. 1987) (same).  Section 46 of the

Restatement provides as follows:

> "(1)      One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  Restatement (Second) of Torts § 46 (1965).
>
> (2)      Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>
> > (a)      to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
> >
> > (b)      to any other person who is present at the time, if such distress results in bodily harm."

<u>Cooper</u>, 2009 WL 2581239, at *1 (quoting Restatement (Second) of Torts § 46).

<u>Cooper</u> explained that there are two types of IIED claims that parents can bring against

school officials. <u>See</u> <u>id.</u> at *1–2.  First, as exemplified by <u>Farmer v. Wilson</u>, No. 91C-09-023,

1992 WL 331450 (Del. Super. Ct. Sept. 29, 1992), parents can bring "a <u>direct</u> claim of emotional

distress under Subsection 1 of Restatement [Section] 46," alleging that they are the victims of

extreme and outrageous conduct. <u>Cooper</u>, 2009 WL 2581239, at *2.  In <u>Farmer</u>, "[t]he minor

child . . . consented to leave school grounds and undergo a routine medical examination," and the

"direct target of any tortious conduct" was the father, who brought an IIED claim "based upon an

alleged violation of his parental rights." <u>Id.</u> at *2.  Parents, however, could also bring a second

type of IIED claim under Subsection 2 of Restatement Section 46 as a <u>third party</u>, alleging that he

or she suffered emotional distress based on "alleged tortious conduct that directly targeted [his or her] children." Id. at *1. In third–party claims, however, "presence is . . . an essential element which must be established to successfully set forth a cause of action for intentional infliction of emotional distress." Doe v. Green, No. 06C-04-005, 2008 WL 282319, at *2 (Del. Super. Ct. Jan. 30, 2008); see also Cooper, 2009 WL 2581239, at *2 (finding that dismissal is required when parents "could not satisfy the elements of a third-party claim because they were not present at the time of the alleged tortious conduct").

In this case, Mr. and Mrs. Wooleyhan have not alleged that school officials caused them emotional distress by violating their parental rights.[3] Instead, the Complaint accuses Jester and other school officials of falsely accusing Roger, Jr. of offensive touching, leading to his subsequent arrest and criminal trial. (See Compl. ¶¶ 27–38.) Thus, Mr. and Mrs. Wooleyhan bring a third party IIED claim against Jester and the other Defendants under Subsection 2 of Restatement Section 46. Mr. and Mrs. Wooleyhan, however, have not alleged that they were present at the time of Jester's conduct, namely when Jester made her allegedly false accusations. As a result, Mr. and Mrs. Wooleyhan have failed to plead an IIED claim against Jester.

---

[3] In addition to Farmer, which has already been distinguished, Mr. and Mrs. Wooleyhan rely upon Bostic v. Smyrna School District, No. 01 0261, 2003 WL 723262 (D. Del. Feb. 24, 2003), a case arising out of a school track coach's ongoing sexual exploitation of, and sexual relationship with, a high school sophomore. According to Mr. and Mrs. Wooleyhan, Bostic held that the parents brought a cognizable IIED claim even though they alleged that they "only spoke with the vice principal" (Resp. 9.) Bostic, however, focused on "the School Defendants' actions towards Mr. and Mrs. Bostic," not their actions towards their daughter, meaning that the case, like Farmer, involved a direct IIED claim based on emotional distress that school officials purportedly caused the parents themselves, rather than the student. 2003 WL 723262, at *8.

In sum, the Court has concluded that Mr. and Mrs. Wooleyhan's IIED claim against Jester should be dismissed with prejudice, but that Roger, Jr.'s IIED claim should be dismissed without prejudice, to give him leave to amend the Complaint to set forth a direct IIED claim that does not sound in defamation.

## C.    Abuse of Process

As for abuse of process, Jester contends that Wooleyhans have not stated a claim upon which relief can be granted, because aside from a purportedly "conclusory and self serving statement . . . that an ulterior motive existed," the Complaint does not plead facts demonstrating any such motive. (Mot. to Dismiss 9–10.)   The Wooleyhans respond that discovery is needed to determine what motivated Jester's initial accusation, or school principal Yore's alleged insistence that Roger, Jr. apologize to her.  (Resp. 12.)

> Under Delaware law, the elements of abuse of process are
>
> (1) an ulterior improper purpose; and (2) a willful act improperly used in the regular conduct of proceedings.  Assessment of abuse of process involves investigation into and interpretation of the intent of the persons invoking the process.  Such issues are difficult to resolve prior to discovery.

STMicroelectronics N.V. v. Agere Sys., Inc, No. 08C-09-099, 2009 WL 1444405, at *4 (Del. Super. Ct. May 19, 2009) (footnote omitted).  Nonetheless, an abuse of process claim must allege

> some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required.  Merely carrying out the process to its authorized conclusion, even though with bad intentions, does not result in liability. Some form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, must be shown.

Read v. Carpenter, No. 95C-03-171, 1995 WL 945544, at *6 (Del. Super. Ct. June 8, 1995).

Wooleyhans' abuse of process claim only alleges that Jester "engaged in a willful use of process for an illegal purpose with an underlying ulterior motive resulting in damages to all

Plaintiffs." (Compl. ¶ 86.) Such a brief conclusory allegation that Jester's actions constituted abuse of process, without any supporting allegations in the Complaint suggesting that Jester committed any "act or threat not authorized by the process," <u>Read</u>, 1995 WL 945544, at *6, fails to sufficiently plead a claim of abuse of process. Accordingly, the Wooleyhans' abuse of process claim against Jester will be dismissed without prejudice, with leave for them to amend the Complaint to set forth an "ulterior motive" underlying Jester's actions.

## V.   Conclusion

Consistent with the reasons detailed above, Jester's Motion to Dismiss will be granted with leave for Roger, Jr. to amend his IIED claim, and for the Wooleyhans to amend their abuse of process claim. An appropriate Order follows.

O:\DE Cases\10-153 Wooleyhan v. Cape Helopen\Wooleyhan v. Cape - MTD Memo.wpd

12