**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**


**ROGER D. WOOLEYHAN**                      \*
                                                             \*
                                                             \*
            **Plaintiff,**                          \*
                                                             \*
            **v.**                                    \*      **CASE NO. 10-153 MMB**
                                                             \*
**CAPE HENLOPEN BOARD OF**            \*
**EDUCATION a/k/a CAPE HENLOPEN**   \*
**SCHOOL BOARD**                          \*      **DEMAND FOR JURY TRIAL**
**GEORGE E. STONE (OFFICIALLY)**      \*
**1270 KINGS HIGHWAY**                  \*
**LEWES, DELAWARE  19958**             \*
                                                             \*
**CAPE HENLOPEN SCHOOL**              \*
**DISTRICT**                                  \*
**SERVE ON:**                                \*
**GEORGE E. STONE (OFFICIALLY)**      \*
**1270 KINGS HIGHWAY**                  \*
**LEWES, DELAWARE  19958**             \*
                                                             \*
                                                             \*
**WILLIAM H. JOPP , in his official**      \*
**capacity as Chief of the Delaware State**  \*
**Police**                                       \*
**JOHN YORE, Individually and in his**    \*
**official capacity as Principal**           \*
                                                             \*
**DIANNE MRAZECK, Individually and in**  \*
**her official capacity as Assistant Principal**  \*
                                                             \*
**ROBERT MAULL, Individually and in**    \*
**his official capacity as Student Services**  \*
**Coordinator**                               \*
                                                             \*
                                                             \*
**WILLIAM MATT, Individually and in**     \*\*
**his official capacity as the Student**     \*
**Resource Officer**                         \*
                                                             \*
**AMANDA JESTER, Individually and in**   \*
**her official capacity as Teacher**         \*

1

|  | * |
|---|---|
| **LISA COVERDALE, Individually and in her official capacity as Teacher** | * |
|  | * |
|  | * |
| **JOHN WALSH, Individually and in his** | * |
|  | * |
|  | * |
| **Defendants,** | * |
|  | * |
|  | * |
|  | * |
|  | * |
|  | * |
|  | * |
|  | * |
|  | * |
|  | * |
|  | * |
|  | * |
|  | * |
|  | * |
|  | * |
|  | * |

## PLAINTIFF'S FIRST AMENDED COMPLAINT
### (Demand for Jury)

COMES NOW, Roger D. Wooleyhan ("Plaintiff"), by and through his attorneys, Stephen P. Norman,  Esquire, the Norman Law Firm, and Shannon L. Kennedy nee Oliver and Joe Kennedy, Esquires, of Kennedy Law, who brings this Complaint against the Cape Henlopen School District (herein also referred to as the "school"), Cape Henlopen School Board, e, John Yore, Dianne Mrazeck, Robert Maull, William Matt, Amanda Jester, Lisa Coverdale, and John Walsh (individually, "Defendant" and collectively the "Defendants") and state the following in support thereof:

## INTRODUCTION

1.      This matter involves an incident that occurred at Cape Henlopen High School captured on a surveillance video where a teacher with a history of reporting questionable crimes falsely accused a student of the crime of Offensive Touching, with the intent that such conduct would lead to instigating proceedings, and, which led to his arrest, prosecution, and suspension from school.

2.      Another teacher who could not have physically been a witness provided false information concerning the incident, including but not limited to asserting her presence, and providing false information about the incident based on her alleged presence to the incident.

3.      A third teacher who witnessed the incident gave an initial written statement that contradicted the teacher's version of the events, provided additional false information, and failed to set the record straight when the school failed to investigate the incident.

4.      The allegations were completely denied by the two students involved in the incident and another non-involved student who witnessed the incident.

5.      Despite the students' denial of the allegations, the school and its employees failed to conduct an investigation of the incident prior to reporting the incident to the police, relying solely on the teacher's false accusations, as was their "de facto" policy.

6.      The incident was reported to the Student Resource Officer, a member of the State Police assigned to the school, who admitted to Plaintiff that his job was to back up the teacher's position.

7.      The Student Resource Officer, took into custody and transported the student to police headquarters without probable cause solely based on the teacher's false statements, as was the "de facto" policy, without conducting an investigation even though the student denied the allegations.

8.      Despite the officer's obvious and admitted conflict of interest he also acted as the prosecutor of the case at trial as was the written and "de facto" policy.

9.      After the student was returned to school he was suspended by the School and its employees based on the teacher's false statements alone, without conducting an investigation, conducting a hearing, or providing the student with an opportunity to be heard, as was their "de facto" policy despite his denial of the allegations.

10.     Days after the incident when the school and its employees had in their possession written statements from teachers and students contradicting the teacher's allegations, they still failed to investigate the incident, relying on the teacher's word alone, as was their "de facto" policy.

11.     Instead of investigating the incident, the school and its employees abused the legal process by attempting to coerce the student into apologizing to the accusing teacher in exchange for terminating the legal proceedings.

12.      After refusing to apologize for a crime he did not commit the student was fully prosecuted, with the arresting officer functioning as the prosecutor, and found not guilty after a complete trial.

13.     The accusing teacher provided false sworn testimony at trial that was not supported by any other witnesses and was contradicted by multiple witnesses and video evidence viewed at trial.

14.     The school, its employees, and the state police and its employees, both applied a "de facto" policy to steadfastly support the teacher's version of the events without conducting an investigation, establishing probable cause, or providing the student with procedural due process, despite readily accessible information contradicting her version of the incident.

15.     Additionally, the school's written policy pertaining to due process when handing out a suspension was also constitutionally deficient.

16.     This application of the "de facto" policy violated the student's clearly established constitutional rights and caused him to suffer other deprivations under state law.

## FACTS

### Parties

17.     Plaintiff Roger D. Wooleyhan ("Mr. Wooleyhan") is a Delaware resident who may be contacted, for the purposes of this litigation through his attorney, Stephen P. Norman of The Norman Law Firm, 29 Atlantic Ave., Suite E, Ocean View, DE 19970.

18.     The Cape Henlopen School District ("CHSD") is a local educational agency as organized under the Laws of Delaware where the incident occurred.

19.    The Cape Henlopen School Board ("CHSB") is a School Board given authority in 14 Del. C. 1043 and other laws of the State of Delaware to administer and supervise policies within the CHSD.

20.    George E. Stone (the "Superintendent") is the former Superintendent of CHSD and Executive Secretary to the Cape Henlopen School Board.

21.    Defendant Amanda R. Jester ("Teacher Jester") is an adult individual who resides at 16 Front Street, Frederica, Delaware  19946.  Defendant Jester was employed as a teacher at Cape Henlopen High School ("CAPE") at the time of the incident.

22.    Defendant Lisa Coverdale ("Teacher Coverdale") is an adult individual who resides at 24070 Shortly Road, Georgetown, Delaware  19947.  Defendant Coverdale was employed as a teacher at CAPE at the time of the incident.

23.    Defendant John Walsh ("Teacher Walsh") is an adult individual who resides at 30455 E. Mill Run, Milton, Delaware  19968.  Defendant Walsh was employed as a teacher at CAPE at the time of the incident.

24.    Defendant John Yore ("Principal Yore") is an adult individual who resides at 27463 Cover Bridge Trail, Harbeson, Delaware  19951.  Defendant Yore was employed as principal at CAPE at the time of the incident.

25.    Defendant Dianne Mrazeck ("Principal Mrazeck") is an adult individual who resides at 30187 Whitehall Drive, Milton, DE  19968.  Defendant Mrazeck was employed as the assistant principal at CAPE at the time of the incident. Upon information and belief, she is now employed at Beacon Middle School.

26.   Defendant Robert Maull (the "SSC") is an adult individual who resides at 3 Schaefer Lane, Lewes, DE  19958.  Defendant Maull was employed as the student service coordinator at CAPE.

27.   Defendant William H. Jopp, is the Chief of the Delaware State Police ("Chief of Police") a Police organization organized under the laws of the State of Delaware.

28.   Defendant William Matt is an adult individual who resides at 10 Oakridge Dr., Milton, DE  19968.  Defendant Matt (the "SRO") was employed by the Police as a School Resource Officer assigned to CAPE at the time of the alleged incident.

### Jurisdiction and Venue

29.   This Court has subject matter jurisdiction over the claims asserted herein pursuant to 42 U.S.C. §1983, 42 U.S.C. §1988,   28 U.S.C. §1331, and supplemental jurisdiction pursuant to 28 U.S.C. §1367.

30.   Personal jurisdiction is proper since all parties either reside in the District or conduct business in the District.  Additionally, the unlawful actions giving rise to the claim took place within this District.

31.   Venue is properly in this Court pursuant 28 U.S.C. §1391(b) because the actions of the Defendants giving rise to the claims asserted herein occurred within this District.

### Factual Allegations

32.   On October 24th, 2008 at approximately 9:30 am Mr. Wooleyhan was in the hallway of CAPE before class with another student, Natalie Pineda ("Ms.

Pineda") when they were physically shoved apart from each other by Defendant Jester in a second floor hallway of Cape Henlopen High School ("CAPE").

33. The incident was caught on the school's surveillance video. Defendant Jester, apparently concerned the students would report her for physically assaulting them, falsely reported to the SRO that Plaintiff had committed the crime of Offensive Touching.

34. Instead of reporting her fabricated charges directly to the principal as required by 14 Del. Code 4112, Defendant Jester broke the chain of command and reported the incident directly to the SRO.

35. Defendant Jester provided additional false information to the SRO including that Plaintiff was late to class.

36. This information was refuted by the surveillance video which showed numerous students in the hallway for a long period of time after the incident and by the in court testimony of Defendant Coverdale who conceded that the students were not late for class at the criminal trial of Plaintiff.

37. Defendant Jester communicated to the SRO that she desired to have Plaintiff arrested and prosecuted for the fabricated offense.

38. Defendant Jester also drafted three fabricated disciplinary referrals (herein also referred to as "write ups").

39. Defendant Jester listed herself and Teacher Walsh as the teachers reporting the incident in the write ups although the language indicates that she alone drafted the fabricated write ups,

40.     The next class period Plaintiff was removed from his class by the SSC and SRO and taken to the office for questioning regarding the incident.

41.     Upon his arrival at the office Plaintiff overheard Defendant Jester exclaim to all present "[n]other one down.  I got them dropping like flies [referring to students]".  Mr. Wooleyhan was extremely confused as to why she would make such a comment and felt the comment was highly inappropriate considering the events that had taken place in the hallway.

42.     Upon information and belief Defendant Jester thrived on the authority and control she enjoyed over students and had abused this authority in the past.

43.     While waiting in the office Mr. Wooleyhan was arrested by the SRO, taken into custody and transported to the Troop 7 Police Station without his consent and without probable cause.

44.     The SRO failed to conduct even a cursory investigation, but rather accepted Defendant Jester's false accusation as sufficient probable cause since it was the "de facto" policy of the CHSD, CHSB, State Police, and Officer not to do an investigation and to take the teacher's word at face value as evidence of probable cause.

45.     The SRO stated on multiple occasions that he believed his job was to support the teacher's position.

46.     After Mr. Wooleyhan was charged with the crime of Offensive Touching he was transported back to CAPE by the SRO where the SSC informed Mr. Wooleyhan that he was suspended for 3 days.

47.    The SSC was enforcing the "de facto" policy of CHSD, CHSB, and the school administration and employees of believing the teacher's word at face value as procedural due process without conducting an investigation.  Defendants enforced this policy despite Defendant Jester's history of reporting questionable crimes leading to the arrest of students.

48.    Mr. Wooleyhan was at no time provided an opportunity to tell his side of the story, present witnesses, or face his accuser prior to being suspended despite his denial of the charges.

49.    Later that day the SRO contacted Plaintiff's mother, Elizibeth Wooleyhan ("Mrs. Wooleyhan) and informed her that the entire incident was captured on video and that it was evident from the surveillance video that Teacher Jester was telling the truth.

50.    He also communicated to  her that his position as SRO required him to support the teacher's position and arrest her son.

51.    Mrs. Wooleyhan also spoke with Principal Mrazeck who in response to mother's inquiries, stated repeatedly that while she had not viewed the video, she was of the position that it conclusively showed that Mr. Wooleyhan committed the alleged acts.

52.    Neither the SRO, Principal Mrazeck, CHSD, CHSB, or any other school employee conducted a reasonable investigation, but rather accepted the teacher's false accusation  at face value, as was their "de facto" policy.

53.   On Monday, October 27, 2008, Mrs. Wooleyhan and Plaintiff's father, Roger B. Wooleyhan, Jr. ("Mr. Wooleyhan")(collectively "the Parents") arrived at CAPE in an attempt to view the video.

54.   Principal Mrazeck indicated she had seen the video and that it appeared that Mr. Wooleyhan elbowed Defendant Jester in the breast.

55.   When requested by the parents to see the tape she also stated that it was school policy that she could not show the Parents' the video.

56.   The Parents' then spoke to the SRO who indicated he had seen the video and it clearly showed that Mr. Wooleyhan elbowed Teacher Jester in the breast.

57.   He also repeated his assertion that it was his job to back the teacher's position.

58.   That same day the school administration obtained written statements of the alleged incident from five alleged witnesses to the incident.

59.   The witnesses included Mr. Wooleyhan, Ms. Pineda, Teacher Jester, Teacher Coverdale, and Teacher Walsh.

60.   The only witness besides Mr. Wooleyhan and Teacher Jester to provide a statement the same day of the incident was Ms. Pineda.  Her statement contradicted Teacher's Jester's version of the incident and supported Mr. Wooleyhan's version.

61.   Additionally, the statement provided by Defendant Walsh, who was the teacher assigned to hall duty with Defendant Jester when the incident occurred, contradicted Teacher Jester's version of the events.

62.   However, his statement provided additional false information concerning the incident.

63.     Teacher Coverdale, who could not have physically witnessed the incident and admitted such at the criminal trial of Plaintiff, provided a false written statement concerning the alleged occurrence.   She also admitted that she discussed the incident with her class personally naming Plaintiff.

64.     On Thursday, October 30, 2008, the Parents' and Mr. Wooleyhan met with Principal Yore in his office.

65.     Mr. Wooleyhan, Sr. stated that he wanted to see the tape and that he would subpoena the video if necessary.

66.     Defendant Yore finally agreed to show the Parents the video.

67.     After watching the video it was evident that the video did not show Mr. Wooleyhan touching Teacher Jester.

68.     After reviewing the video with Principal Yore the Parents' requested the charges be dropped, that Mr. Wooleyhan's fingerprints be taken out of the criminal system, and that the three day suspension be erased from his school record.

69.     In response Principal Yore suggested that Mr. Wooleyhan apologize to Defendant Jester.

70.     He repeated this assertion to Plaintiff in the hallways of CAPE on or about, November 7, 2008.

71.     The CHSD, CHSB, Principal Yore, Principal Mrazek, the SSC, and SRO, and Police all relied upon the false accusation provided by Teacher Jester and failed to conduct an investigation of the incident, as was their "de facto" policy.

72.     Upon information and belief, when Defendant Yore requested that Plaintiff apologize to Defendant Jester he was communicating a demand from Defendant Jester who made the request to obtain an admission of wrongdoing or impropriety from Plaintiff since Defendant Jester sought evidence to legitimize her false allegations

73.     When Plaintiff refused to apologize for a crime he did not commit Defendant Jester went forward with insisting upon the prosecution of the false charges.

74.      The fact that Defendant Jester was the driving force behind the arrest, prosecution and criminal trial against Mr. Wooleyhan  was made clear in the state's case which stated that "the victim [Jester] has a right to …file a complaint and show that this, in fact happened."

75.     On February 3, 2009, a trial was held in JP Court#2 in Lewes, Delaware.

76.     Teacher Jester and Teacher Coverdale testified as state witnesses and the SRO was the prosecutor for the State.

77.     Despite being issued a subpoena Teacher Walsh did appear for the proceeding.

78.     Defendant Jester falsely testified at trial that Plaintiff committed the crime of Offensive Touching.

79.     Additionally, there were other false statements in Defendant Jester's testimony including her steadfast allegation that the students were late to class.

80. Defendant Jester's false testimony was contradicted by testimony from the State's own witness, Defendant Coverdale, Ms. Pineda, another student witness, and by video evidence which showed a significant population of students in the hallway long after the incident had dispersed.

81. Defendant Jester also testified for the State that this was not the first time she had brought criminal charges against a student.

82. After a full trial Mr. Wooleyhan was found not guilty on all charges.

**The Policies of the CHSD, the Chief of Police,  and the other Defendants Acting in their Official Capacities**

83. The SRO did not perform an investigation of the incident prior to arresting Mr. Wooleyhan since it was the "de facto" policy of the Chief of Police, CHSD, CHSB, Police, Superintendent, and SRO not to undertake an investigation when a teacher made allegations of a crime concerning a student and to take the teacher's word as probable cause alone.

84. Defendants undertook this policy despite prior reporting of crimes by Defendant Jester that were highly suspect.

85. Additionally, the policy of the Police, and SRO in his official capacity of acting as both the arresting officer and prosecutor also violated Mr. Wooleyhan's clearly established constitutional rights.

86. The Cape Henlopen School District High School Code of Conduct ("CHSD Code") regarding due process was constitutionally deficient on its face.

87. Additionally, the "de facto" policy of the CHSD, CHSB and its employees, principals, and teachers acting in their official capacity of relying on the

teacher's allegations without undertaking an investigation of the incident

violated Mr. Wooleyhan's clearly established constitutional rights.

88. This "de facto" policy was followed despite Mr. Wooleyhan's persistent

denial of the incident, witnesses who contradicted Teacher Jester's version of

the events, and contradictory video evidence.

89. He was never allowed to provide his side of the story, question his accuser,

call witnesses, or take any other action to protect his clearly established due

process rights.

## COUNT I- VIOLATION OF 42 U.S.C. §1983 MALICIOUS PROSECUTION FOURTH AMENDMENT

90. Plaintiff hereby incorporates paragraphs 1-89 above and all of the paragraphs

below as if fully restated herein.

91. Teacher Jester, Teacher Coverdale, and Teacher Walsh provided false

statements to the SRO, SSC, Principal Yore, and Principal Mrazeck that led to

the unlawful arrest and prosecution of Mr. Wooleyhan for violation of 11 Del.

C. § 601.

92. Principal Yore, Principal Mrazeck, the SSC, and SRO caused the arrest and

prosecution without probable cause and by failing to conduct an investigation

instead relying upon the Teachers' false statements as probable cause as was

their "de facto" policy.

93. The Criminal Proceeding ended in a Not Guilty Verdict in favor of Mr.

Wooleyhan.

94. The Defendants, Teacher Jester, Teacher Coverdale, and Teacher Walsh,

acted maliciously and not for the purpose of bringing Mr. Wooleyhan to

justice by making false accusations concerning Mr. Wooleyhan, and Principal Yore, Principal Mrazeck, the SRO, and the SSC by following their "de facto" policy of relying solely upon teacher accusations and refusing to investigate exculpatory evidence presented to them.

95.    Mr. Wooleyhan suffered deprivation of liberty and other damages consistent with the concept of seizure as a consequence of the legal proceeding and false arrest, including but not limited to, his suspension, legal fees, lost opportunity to learn, anxiety, embarrassment, humiliation, mental anguish, distress and other damages.

## COUNT II- VIOLATION OF 42 U.S.C. §1983  BASED ON 4TH AMENDMENT UNLAWFUL DETENTION AS TO INDIVIDUAL DEFENDANTS

96.    Plaintiff hereby incorporates paragraphs 1-95 above and all of the paragraphs below as if fully restated herein.

97.    Teacher Jester provided false statements to the SRO, SSC,  and Principal Mrazeck that led to the unlawful arrest of Mr. Wooleyhan.

98.    Principal Mrazeck,  the SSC, and SRO caused the arrest without probable cause and by failing to conduct an investigation instead relying upon the Teacher's false statements as probable cause as was their "de facto" policy.

99.    The intrusion was not justified at its inception. There was no investigation. None of the available witnesses were interviewed prior to his arrest.  The video  of the incident clearly did not support the false accusation made by Defendant Jester. Despite Defendant Jester's history of reporting suspect crimes the arrest was based solely on Defendant Jester's false statement.

100.    The scope of the intrusion was not reasonably related to the circumstances that gave rise to it and could have been avoided by any of a number of preventive measures including a proper preliminary investigation including interviewing readily available witnesses prior to arresting Plaintiff.

101.    Mr. Wooleyhan was not causing a disturbance, nor had he caused disturbances in the past, no students were at risk, and there were no other circumstances that prevented an investigation from occurring prior to the unlawful detention of Mr. Wooleyhan.

### COUNT III- VIOLATION OF 42 U.S.C. §1983 SUSPENSION BASED ON FAILURE TO PROVIDE PROCEDURAL DUE PROCESS

102.    Plaintiff hereby incorporates paragraphs 1-101 above and all of the paragraphs below  as if fully restated herein.

103.     Teacher Jester, Teacher Coverdale, Teacher Walsh, the SRO, the SSC, Principal Yore, and Principal Mrazeck failed to provide Mr. Wooleyhan procedural due process in violation of his clearly established constitutional rights.

104.    Mr. Wooleyhan denied the charges against him.

105.    The Defendants failed to investigate the incident and instead accepted Teacher Jester, Teacher Coverdale, and Teacher Walsh's false statements,  as a substitute for a right to be heard, as was their "de facto" policy.

106.    He was not provided an explanation of the evidence the school had against him and he was not provided an opportunity to call witnesses, present his side of the story, or in any way to characterize his conduct or put it in the proper context.

107.    Mr. Wooleyhan complied with the request of Defendants to come to the office and was not creating a disturbance, and there were not any circumstances present where his removal was warranted without providing an opportunity to be heard.

108.    Mr. Wooleyhan was damaged by the lack of due process and suffered serious damage to his school record and reputation.

109.    Mr. Wooleyhan suffered additional damages, including but not limited to, humiliation, embarrassment, lost opportunity to learn, mental anguish and distress as a result of Defendants' conduct.

110.    Teacher Jester, Teacher Coverdale, and Teacher Walsh were at fault in making the false comments and had no legal duty to make the defamatory comments.

111.    The comments were made without legal privilege and in violation of the student's right of privacy.

### COUNT IV- VIOLATION OF 42 U.S.C. §1983 USE OF EXCESSIVE FORCE AS TO DEFENDANT MATT, THE SRO, ONLY

112.    Plaintiff hereby incorporates paragraphs 1-111 above  and all of the paragraphs below as if fully restated herein.

113.    The SRO used excessive force when detaining and arresting Mr. Wooleyhan since under the circumstanced confronting the SRO the use of any force was objectively unreasonable.

114.    Under the facts and circumstances the SRO did not have probable cause to detain Mr. Wooleyhan.

115.    The alleged crime committed was not severe, the threat of danger to the officer and society was never an issue, there were not split second decisions required of the SRO, and Mr. Wooleyhan was in no way resisting or attempting to evade arrest.

## COUNT V- VIOLATION OF 42 U.S.C. §1983 AS TO THE INSTITUTIONAL DEFENDANTS-CHIEF OF POLICE, CHSD, CHBE,

116.    Plaintiff hereby incorporates paragraphs 1-115 above and all of the paragraphs below as if fully restated herein.

117.    Defendants CAPE, Teacher Jester, Teacher Coverdale, Teacher Walsh, Prinsipal Mrazaeck, Superintendent, Chief, SCC, CHSD, CHBE, and Police acted with deliberate indifference to the consequences of its written and "de facto" policies, and established and maintained a policy, practice or custom which directly caused constitutional harm to Mr. Wooleyhan.

118.    There was a direct causal connection between the policies and Mr. Wooleyhan's injuries.

## COUNT VI- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ALL PLAINTIFF

119.    Plaintiff hereby incorporates paragraphs 1-118 above  and all of the paragraphs below as if fully restated herein.

120.    The actions and conduct of Defendants Teacher Jester, Teacher Coverdale, Teacher Walsh, SRO, Superintendent,  SSC, CAPE, CHSB, Principal Mrazeck, and Principal Yore were outrageous and reflected a conscious indifference to its foreseeable effects upon the Plaintiff.

121.    Defendants' physical assault of plaintiff, false accusations, highly inappropriate and offensive comments, false statements concerning guilt, suspension of Plaintiff without probable cause, institution of proceedings and subsequent treatment of Plaintiff are sufficiently outrageous to bring a claim for Intentional Infliction of Emotional Distress. See, *Cummings v. Pinder*,

Del.Supr., 574 A.2d 843 (1990) ("The intentional infliction of severe

emotional distress may provide the legal predicate for an award of damages,

even in the absence of accompanying bodily harm, if such conduct is viewed

as outrageous.").

122.   Defendants acting together intentionally filed and pursued criminal assault

charges against Mr. Wooleyhan with an improper motive. Cf. Harris-Thomas

v. Christina Sch. Dist., 2003 U.S. Dist. LEXIS 22914 (D. Del. Dec. 18, 2003)

("there is no evidence in the record to support plaintiff's allegation that anyone

intentionally filed assault charges against Isaac with an improper motive.");

affirmed in part and vacated in part by, *Harris-Thomas v. Christina Sch.

Dist.*,145 Fed. Appx. 714, 2005 U.S. App. LEXIS 14152 (3d Cir. Del. 2005).

123.   Defendant Jester's role included , but is not limited to, physically assaulting

Plaintiff, falsely accusing Plaintiff of a crime, insisting to other Defendants

that Plaintiff be arrested and prosecuted, asserting her power through

inappropriate and offensive comments in the presence of Plaintiff,

inappropriately demanding an apology to emphasize her power and authority

over Plaintiff, and falsely testifying in Court against Plaintiff.

124.   Defendants together intended to institute proceedings with knowledge that or

with reckless disregard to the fact that Mr. Wooleyhan did not commit a

crime.

125.   Defendant Matt's conduct includes, but is not limited to, arresting Plaintiff

without due process, falsely communicating to others that the evidence

concerning Plaintiff's guilt was conclusive, and maliciously prosecuting Plaintiff despite not credible evidence.

126. Defendants Mrazek and Matt falsely insisted and communicated to Plaintiff and his parents that the school surveillance video conclusively showed Plaintiff committed the alleged crime.

127. Defendants Coverdale and Walsh provided information as part of the investigation of the incident they knew or should have known was false.

128. Defendant Maull suspended Plaintiff without probable cause.

129. Defendant Yore improperly and repeatedly demanded an apology from Plaintiff for a crime he did not commit.

130. Defendants' motivations for their actions, inactions and treatment of Mr. Wooleyhan since the October 24, 2008 incident are not based on legitimate reasons.

131. The Defendants motive was to protect Defendants for their actions or inactions, including but not limited to, Defendants' Constitutional violations.

132. In the alternative, or in addition to the aforementioned improper motives, the Defendants' motive was to protect Defendant Jester for her physical separation and/or pushing the two high school students away from each other.

133. In the alternative, or in addition to the aforementioned improper motives, the Defendants' motive was to protect the reputation of Defendants, Defendants colleagues, employees and/or employers.

134. In the alternative, or in addition to the aforementioned improper motives, the Defendants acted out of the Defendants' policy and habit of instituting proceedings without an investigation.

135.    In the alternative of or in addition to the aforementioned improper motives, Defendants were motivated by their improper desire to create an image of authority and control.

136.    In the alternative, or in addition to the aforementioned improper motives, Defendant Jester's motivation was based on her emotions, such as anger instead of reason.

137.    In the alternative, or in addition to the aforementioned improper motives, Defendant Jester's motivation was for sport, or entertainment, as indicated by Defendant Jester's declaration of victory "I've got them dropping like flies" as she turned in her write ups to the office.

138.    In the alternative, or in addition to the aforementioned improper motives, Defendants were motivated by camaraderie and a code of silence among peers.

139.    In the alternative, or in addition to the aforementioned improper motives, the Defendants had some other improper purpose for instituting their conduct.

140.    Defendants' motives and concerns were not proper.

141.    The Schools handling of the matter was so recklessly indifferent to the consequences to Mr. Wooleyhan as to be outrageous showing an evil motive or reckless indifference.  It was foreseeable to all the Defendants that their unacceptable conduct threatened particular harm to Mr. Wooleyhan.

142.    The actions and conduct of the Defendants caused Mr. Wooleyhan foreseeable and severe emotional distress, including but not limited to, mental anguish, humiliation, embarrassment, worry, difficulty sleeping, and physical symptoms such as stomach aches.

143.   In addition, as a foreseeable result of the incident, Mr. Woolehan decided to forgo going to college.

144.   Mr. Wooleyhan also suffers from foreseeable anxiety and mental anguish about his future as a result of this incident.

## COUNT VII- DEFAMATION AS TO DEFENDANTS JESTER AND COVERDALE

145.   Plaintiff hereby incorporates paragraphs 1-144 above and all of the paragraphs below, as if fully restated herein.

146.   Defendants Coverdale and Jester made a false and defamatory communication concerning Mr. Wooleyhan to their classes and to persons within the school administration.  Defendants Coverdale and Jester's communications were separate from and in addition to, the statements which instigated disciplinary action and the statements which instigated judicial proceedings against Mr. Wooleyhan.

147.   Both Defendants Coverdale and Jester made false defamatory statements to their classes, and possibly other students, and other individuals, concerning the October 24th, 2008 incident.

148.   It was foreseeable and likely that the students and other individuals would republish Defendants Coverdale and Jester's false and defamatory statements;

149.   The students and possibly other individuals did republish the defamatory statements;

150.   Both Defendants understood that their comments concerning Mr. Wooleyhan committing a crime were defamatory in nature.

151.    Both Defendants were at fault in making the comments and had no legal duty
         to make the defamatory comments.

152.    Mr. Wooleyhan suffered damages to his reputation.

153.    The defamatory remarks were defamatory per se in that they imputed a crime
         to Mr. Wooleyhan.

154.    The false defamatory statements were made with malice.

### COUNT VIII- MALICIOUS PROSECUTION

155.    Plaintiff hereby incorporates paragraphs 1-154 as if fully restated herein.

156.     Teacher Jester, Teacher Coverdale, Teacher Walsh, the SRO, the SSC, Vice
         Principal Mrazeck and Principal Yore initiated a criminal proceeding charging
         Mr. Wooleyhan with the offense of Offensive Touching pursuant to 11 Del. C.
         § 601.

157.    The former proceedings were instituted by Defendants, or at the insistence of
         the Defendants in this action.

158.    The Criminal Proceeding ended in a Not Guilty Verdict in favor of Mr.
         Wooleyhan.

159.    The proceeding was initiated with malice since Defendants knew or should
         have known the allegations were without merit.

160.    There was a lack of probable cause for the institution of the proceedings.

161.    Mr. Wooleyhan suffered injury including damages incurred in defending
         himself and injury to his reputation from the former proceedings.

### COUNT IX- FALSE IMPRISONMENT

162.    Plaintiff hereby incorporates paragraphs 1-161 above and all of the paragraphs below as if fully restated herein.

163.    Defendants Jester, Coverdale, Matt, Maull, and Mrazeck deprived Mr. Wooleyhan of his liberty.

164.    The restraint of Mr. Wooleyhan was without his consent.

165.    The restraint of Mr. Wooleyhan was without legal justification.

**COUNT X- ABUSE OF PROCESSDEFENDANTS JESTER AND YORE ONLY**

166.    Plaintiff hereby incorporates paragraphs 1-165 as if fully restated herein.

167.    Defendants  Jester and Yore engaged in a willful use of process for an illegal purpose with an underlying ulterior motive resulting in damages to  Plaintiff.

168.    The incident began when Defendant Jester physically assaulted Plaintiff and another student.

169.    Fearing that the students would report her for assault Defendant Jester falsely reported the incident and began legal proceedings in an unlawful attempt to circumvent Plaintiff from reporting her unlawful assault to the school administration.

170.    Defendant Jester insisted upon the arrest and prosecution of Plaintiff in order to protect her own legal interests including her position as a teacher.

171.    Defendant Yore at the urging of Defendant Jester demanded an apology from Plaintiff on multiple occasions in exchange for dropping the charges against Plaintiff.  When Plaintiff refused to apologize for a crime he did not commit

the charges were fully prosecuted despite no credible corroborating witnesses and substantial evidence that the crime was not committed.

172.   The initial institution of proceedings and demand for an apology in exchange for dropping the charges was a willful use of process for an improper purpose with an underlying motive.

173.   Mr. Wooleyhan suffered injury including, but not limited to, damages incurred in defending himself and injury to his reputation from the former proceedings.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.  Injunctive relief enjoining the School board, the Superintendent, School District, the Chief of Police, their agents and/or employees to: 1) completely remove the three day suspension from Mr. Wooleyhan's school record; 2) remove and/or expunge the arrest record of Mr. Wooleyhan including removal of his finger prints from the criminal justice system; 3) immediately cease and desist their "de facto" policies of relying on  a teacher's accusation as a substitute for probable cause and procedural due process without conducting an investigation; 4) immediately amend the written policy of the School District to comply with constitutional requirements of due process; 5) discontinue the policy of assigning arresting officers to function as prosecutors in all criminal matters involving potential imprisonment; 6) direct Defendants' to take such affirmative action as is necessary to ensure that the effects of these unlawful acts and constitutional violations are eliminated and do not continue to infringe Plaintiffs' or those similarly situated constitutional rights.

B.  Entry of a judgment declaring the "de facto" policies of the School and the Police and the written policy of the school regarding due process are unconstitutional.

C.  Entry of judgment Declare that Defendants' disciplinary action against Mr. Wooleyhan including the arrest, suspension, and prosecution violated his constitutional rights.

D.  All lawful damages, including compensatory damages in an amount to be determined, against the School District, School Board, and Police, and Defendants Jester, Coverdale, Walsh, Matt, Maull, Mrazek, and Yore, in their individual capacities.

E.  Nominal damages.

F.  An award of punitive damages in an amount sufficient to punish Defendants and discourage them and others from engaging in similar conduct in the future.

G.  Damages for emotional distress, mental anguish, and damage to reputation.

H.  Plaintiffs' costs in this action, including reasonable attorney fees pursuant to 42 U.S.C. §1988 and pre and post judgment interest.

I.  Such other relief as this Court deems just and equitable.

J.  Trial by Jury.



Respectfully submitted,


____/s/ Stephen P. Norman_____
Stephen P. Norman, Esquire, Bar No. 4620
The Norman Law Firm
29 Atlantic Avenue, Suite E
Ocean View, Delaware 19970

(302) 537-3788
snorman@spnlaw.com
*Attorney for Plaintiffs*