IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROGER D. WOOLEYHAN, : CIVIL ACTION
:
    Plaintiff, :
:
v. :
:
CAPE HENLOPEN SCHOOL DISTRICT, : NO. 10-153
et al., :
:
    Defendants. :

## MEMORANDUM ON MOTION FOR SUMMARY JUDGMENT ON MONELL CLAIM

Baylson, J.                                                                                            September 12, 2011

### I.   Introduction

This action arises out of Defendant Cape Henlopen High School teacher Amanda R. Jester's ("Jester") accusation that Plaintiff Roger D. Wooleyhan ("Wooleyhan"), a student at the school, offensively touched her. Wooleyhan asserted several civil rights and state-law claims against Jester and various other public officials for their handling of the accusation.

In two previous decisions, the Court granted summary judgment to certain Defendants in their individual capacity, and granted partial summary judgment to others. (See Summ. J. Memo., ECF No. 199; Mot. to Reconsider Memo., ECF No. 215.) The Cape Henlopen School District (the "District") and the Cape Henlopen Board of Education (the "Board") now move for summary judgment on Wooleyhan's Monell claim.[1] (Mot. Summ. J., ECF No. 221.) Defendant Lisa White ("White") also requests the Court to again consider her request for summary

---

    [1] As explained in the first Summary Judgment Memorandum, the Court cabined discovery into two parts. The instant Motion for Summary Judgment concerns the liability of the District and the Board for Wooleyhan's Monell claim.

-1-

judgment on Wooleyhan's defamation claim. (See Summ. J. Memo. at 45-46 (denying White's first request for summary judgment).) Wooleyhan responded (Answering Br., ECF No. 226), and Defendants replied (Reply, ECF No. 228). After careful consideration of the Motion, the parties' briefing, and for the reasons that follow, the Court will deny Defendants' Motion.

## II. Factual and Procedural Background

The Court's original Summary Judgment Memorandum outlined the full history of this case, including an explanation of Wooleyhan's claims. (See id. at 2-13.) The Court will not repeat those details here, but will supplement them with additional facts and history pertinent to the Motion under consideration.

The District and Board implemented a written policy regarding the appropriate procedure for issuing out-of-school suspensions. According to the policy,

> "[p]rior to a suspension from school, a student shall be given oral or written notice of the charges and be given an opportunity to tell his/her side of the story.
>
> Generally, the notice and hearing . . . should precede the student's removal from school. Notification shall state the cause and duration of the suspension. . . . .
>
> Students whose parents cannot be reached by telephone will be retained at school until the end of the school day. However, if this is not feasible or if the immediate removal of the student from school is necessary to protect the safety of individuals, property, or the integrity of the educational process, the necessary notice and hearing will follow as soon as possible."

(Defs. App., ECF No. 223, at 19.) Nothing in the record suggests a written policy exists for allegations of offensive touching in particular.

In the original Summary Judgment Memorandum, the Court granted summary judgment to several defendants, including John Yore ("Yore"), Dianne Mrazeck ("Mrazeck"), Robert

Maull, and William Matt.[2] The Court granted partial summary judgment to Jester and White, but denied summary judgment on Wooleyhan's claims against them for § 1983 unlawful detention, state malicious prosecution, and defamation against Jester, and for defamation against White.

Wooleyhan subsequently filed a Motion for Reconsideration of the Court's decision to grant Yore and Mrazeck qualified immunity from Wooleyhan's § 1983 procedural due process claim. (Mot. to Reconsider, ECF No. 201.) On reconsideration, the Court concluded that Yore and Mrazeck were entitled to summary judgment because Wooleyhan did not show the facts would warrant a jury finding that Yore and Mrazeck acted with sufficient intent. (Mot. to Reconsider Memo. at 6-9.)

In his Amended Complaint, Wooleyhan asserts a § 1983 claim for the violation of his procedural due process rights against the Board and the District pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978). (Am. Compl., ECF No. 87, ¶¶ 116-18.) He alleges Defendants' de facto policies of suspending students without investigation and solely relying on teachers' accusations directly caused him constitutional harm. (See id. ¶¶ 5, 9-10.)

### III. Jurisdiction and Standard of Review

#### A. Jurisdiction

The Court has jurisdiction over Wooleyhan's § 1983 claim pursuant to 28 U.S.C. § 1331. Venue is appropriate under 28 U.S.C. § 1391(b).

#### B. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

---

[2] After the Court granted Matt summary judgment on Wooleyhan's individual capacity claims, the parties stipulated to the dismissal of all claims against William Matt and William Jopp. (See Order, ECF No. 206.)

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion, and identifying those portions of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see Fed. R. Civ. P. 56(c)(1). When the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. After the moving party has met its initial burden, the non-moving party's response must "cit[e] to particular parts of materials in the record" to support its assertion that genuine disputes of fact exist. Fed. R. Civ. P. 56(c)(1)(a). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

On a motion for summary judgment, the Court must view the evidence presented in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255. The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. Id. Further, credibility determinations, weighing of evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge. Id.

## IV. Parties' Contentions

The District and the Board contend they are entitled to summary judgment on Wooleyhan's Monell claim because he has failed to adduce evidence of a policy, practice, or custom of violating students' constitutional rights. First, they argue the Court has already found the individual defendants are not liable for alleged violations of Wooleyhan's procedural due process rights and, under the law of the case doctrine, they cannot be liable either. Further, the District and Board instituted a written policy for suspensions which adopts the requirements of Goss v. Lopez, 419 U.S. 565 (1975), and failure to abide by the written policy does not create a constitutional claim. They also argue Wooleyhan was not deprived of due process because he never requested to see the evidence against him. Finally, they contend a state statute extinguishes Wooleyhan's entitlement to a public education and, therefore, no process is due.

White argues she is entitled to summary judgment on Wooleyhan's defamation claim because she spoke pursuant to conditional privileges and she is entitled to state-law immunity.

Wooleyhan responds that the District and Board have an unwritten, de facto policy or custom of automatically suspending students accused of offensive touching, which deprives students of their procedural due process rights pursuant to Goss. As for White's request, Wooleyhan contends the Court already addressed her arguments in its original Summary Judgment Memorandum, she is not entitled to a privilege or state-law immunity, and he does not need to plead special damages because White's statements were defamatory per se.

V.   **Discussion**

   A.   **Monell Claims Against the District and the Board**

   1.   **Legal Standards**

In general, to succeed on a § 1983 claim, a plaintiff must demonstrate that defendants, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or the laws of the United States. See Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008). Municipal subdivisions, such as school districts, are considered state actors for the purposes of § 1983. See, e.g., Spirk v. Centennial Sch. Dist., No. 04-4821, 2005 WL 433321, at *4-5 (E.D. Pa. Feb. 22, 2005); see also Del. Code. Ann. tit. 14, § 1043 (granting local school boards authority to govern school districts).

The Court previously identified the procedural due process right at issue in this case and concluded that genuine disputes of material fact exist regarding whether Wooleyhan received due process. In sum, Delaware law creates an entitlement to a public education. See Jones v. Milford Sch. Dist., No. 3194, 2010 WL 1838961, at *3 n.23 (Del. Ch. Apr. 29, 2010) (citing Del. Const. art. X, § 1); Rucker v. Colonial Sch. Dist., 517 A.2d 703, 704 (Del. Super. Ct. 1986) (asserting there is no question Delaware citizens are entitled to a free public education under state law). Consequently, Wooleyhan is entitled to receive due process before the state can deprive him of that right. See Shuman v. Penn Manor Sch. Dist., 422 F.3d 141, 149 (3d Cir. 2005) (stating that once court determines procedural due process applies, question becomes what process is due).

As discussed in the prior Memoranda, in Goss v. Lopez, the Supreme Court identified the process due to a public school student suspended for ten days or less: (1) the student must be

given oral or written notice of the charges and, if he denies them, (2) an explanation of the evidence the authorities have and (3) an opportunity to present his side of the story. 419 U.S. 565, 581 (1975). Goss requires only that the student be given some kind of notice and some kind of hearing. Id. at 579. There need be no delay between the time notice is given and the time of the hearing – the disciplinarian may informally discuss the alleged conduct with the student minutes after it has occurred. Id. at 582. Goss is clear that the hearing should precede removal except in limited circumstances, and Defendants have not argued on summary judgment that such limited circumstances existed or that they were aware Wooleyhan posed a continuing danger or ongoing threat. See id. at 582-83. Although due process in this context does not require the opportunity for counsel or confronting or calling witnesses, the student must first be told of what he is accused and the basis for the accusation. Id. at 582.

As indicated above, the Court previously concluded a genuine dispute of material fact exists regarding whether Wooleyhan received due process prior to his suspension. But a municipal subdivision cannot be held liable for the unconstitutional acts of its employees under a theory of respondeat superior; rather, Wooleyhan must demonstrate the violation of his right was caused by either a policy or custom of the Board or District. See Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000). The Court must consider the claims against the municipal subdivision independently of the claims against the employees. See Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004); Fagan v. City of Vineland, 22 F.3d 1283, 1292 (3d Cir. 1994) (en banc).

Policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. Berg, 219 F.3d

at 275. Proving final authority is an essential element. LaVerdure v. County of Montgomery, 324 F.3d 123, 126 (3d Cir. 2003). Customs, on the other hand, are practices of state officials so permanent and well-settled as to virtually constitute law. Berg, 219 F.3d at 275. A plaintiff can demonstrate a custom exists by showing the practice is so well-settled and widespread that the policymaking officials have either actual or constructive knowledge of it. Id. at 276. If the plaintiff can establish a custom exists, a single application of the custom suffices to establish it was done pursuant to official policy and, thus, to establish the municipality's liability. Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989).

Once the plaintiff demonstrates a policy or custom, he or she must then demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged, i.e. the municipal action was taken with the requisite degree of culpability and a causal link exists between the action and the deprivation. Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997); Berg, 219 F.3d at 276.

Where the plaintiff claims the municipal action violates federal law on its face, issues of fault and causation are straight-forward: proof the authorized decision maker intentionally deprived the plaintiff of a federally protected right necessarily establishes the municipality acted culpably and that the municipal action was the moving force behind the plaintiff's injury. Bryan Cnty., 520 U.S. at 404-05. If, however, the policy or custom does not facially violate federal law, causation can be established by demonstrating the action was taken with deliberate indifference as to its known or obvious consequences. See Berg, 219 F.3d at 276. Simple or heightened negligence is not sufficient. Id.

On a motion for summary judgment, the Court's task is to determine whether the plaintiff

has presented sufficient evidence to allow a reasonable jury to draw an inference of a custom and that causation exists. See Watson v. Abington Twp., 478 F.3d 144, 157 (3d Cir. 2007) (concluding that so long as causal link is not too tenuous, jury is to determine causation; framing question on appeal as whether plaintiff presented sufficient evidence to allow inference of custom); see also Beck v. City of Pittsburgh, 89 F.3d 966, 976 (3d Cir. 1996) (reversing district court's entry of judgment as a matter of law because plaintiff presented sufficient evidence to allow reasonable inference municipality knew about and acquiesced in custom).

### 2. Analysis

The Court has not found any decisions considering Monell liability on analogous facts, so the analysis will rely on Monell principles gleaned from other appellate court decisions.

Two of Defendants' arguments can be dismissed at the outset. First, the Court's finding that Yore and Mrazeck did not act with sufficient culpability does not control the Court's analysis of the Board's and the District's culpability, if any. The Third Circuit instructs district courts to consider the claims against the municipality and its employees independently. See Carswell, 381 F.3d at 244. Further, a finding of municipal liability does not depend automatically or necessarily on the liability of any individual state officer; a municipality can be liable for a policy or custom that causes a deprivation even if the officer's individual conduct did not have the requisite culpability. Cf. Fagan, 22 F.3d at 1292 (concluding municipality's liability for deprivation of substantive due process did not depend on finding that officer's individual conduct "shocks the conscience").

Second, Defendants rely on section 4112 of Title 14 of the Delaware Code to argue that state law extinguished Wooleyhan's entitlement to a public education once he was arrested for

the alleged offensive touching.[3] As a consequence, Defendants argue Wooleyhan was not entitled to any due process at all because there was no entitlement under state law. See Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005) (holding property rights entitled to procedural due process protection do not arise from the Constitution but are created and defined by independent sources, such as state law).

Wooleyhan's entitlement, however, stems from Delaware's Constitution, which cannot be amended by statute. See Jones, 2010 WL 1838961, at *3 n.23 (suggesting right to public education in Delaware may arise from state constitution); see also Del. Const. art. XVI, §§ 1, 2 (establishing process to amend or revise state constitution). Further, nothing on the face of section 4112 suggests it has any substantive effect on the right to education in Delaware, and the Court will not infer such effect. Instead, the statute, on its face, advises schools when to suspend a student, i.e. when a student has forfeited his right to attend school by his or her conduct, which as only dictating a certain procedure within a school, does not preempt or negate federal principles. See McDaniels v. Flick, 59 F.3d 446, 458 (3d Cir. 1995) (stating the adequacy of process is a question of federal law, not state law) (citing Vitek v. Jones, 445 U.S. 480, 491 (1980)). Similarly, because Delaware's Constitution has been interpreted to recognize a right to education, a statute cannot be interpreted differently. Also, when the school is deciding whether to suspend a student for ten days or less, interpretation of a state statute must take place with

---

[3] Section 4112 identifies certain offenses that, if committed by a student, must be reported by the school to the police or the Delaware Department of Education. This list includes the accusation against Wooleyhan, i.e. offensive touching. Del. Code Ann. tit. 14, § 4112(b)(1)(b). Subsection (d), originally enacted in 1993, provides that if the police agency determines probable cause exists to believe the student committed the crime, "the student shall be given . . . an immediate internal or external suspension by the school until a parent conference is held." Id. § 4112(d)(1)(b); see 69 Del. Laws c. 120, § 3 (1993).

respect for the Supreme Court's holding as to the procedure the school must follow. See Goss, 419 U.S. at 581.

This conclusion does not necessarily invalidate section 4112(d)(1)(b) because schools can still comply with Goss and abide by the statute's directive to impose an "immediate internal or external suspension." Goss requires only some kind of notice and some kind of hearing. Id. at 579. In many cases, the school can comply with Goss in short order and still impose an "immediate internal or external suspension." The question remains whether the Board or District has implemented an unconstitutional policy or custom which was the "moving force" behind Wooleyhan's alleged constitutional injury.

The Court concludes Wooleyhan has presented sufficient evidence to allow a jury to infer a custom exists to suspend students accused of offensive touching without affording adequate procedural due process. Wooleyhan has also presented sufficient evidence to allow a reasonable inference of culpability and causation. Thus, summary judgment is not warranted.

Wooleyhan primarily argues an unconstitutional de facto or unwritten custom, somewhat different from the District's and Board's written policy that mirrors the requirements of Goss. (See Defs. App. at 18-19.) Wooleyhan's contention is supported by the designated witness for the District and the Board, Ed Waples ("Mr. Waples"),[4] who testified to the existence of an unwritten policy that any student accused of an offensive touching, regardless of whether he or she is arrested or denies the charges, is automatically issued an out-of-school suspension pending

---

[4] Mr. Waples is a District employee responsible for issues related to student discipline and achievement, special programs, grants, and various committees. (Pl. App., ECF No. 227, at 3.) Prior to his current position, he served as principal of the School from 2002-2005, immediately preceding Yore's tenure as principal. (Id.)

an investigation. (Pl. App., ECF No. 227, at 6, 10-11, 15-16.) Mr. Waples admitted this Board "policy" (id. at 7, 10-11), and stated that "a lot" of students other than Wooleyhan have been suspended pursuant to it (id. at 16-17).[5] Although he was not sure when or where the unwritten policy originated, he knew of the policy as early as 2002, when he became principal of the School. (Id. at 18.) Based on this testimony, a reasonable jury could infer that separate and apart from their written policy, the District and Board have either established or acquiesced in a custom of informing the student of the accusation against him or her, allowing the student to offer his or her side of the story, and then automatically suspending pending review.

Further, Wooleyhan has presented sufficient evidence that this custom, either on its face or as applied, violates federal law. In Goss, the Supreme Court did not distinguish between "procedural" and "disciplinary" suspensions, nor did it consider "suspensions pending investigation." Instead, the Court established a bright-line rule requiring certain procedural protections for students issued out-of-school suspensions ten days or less. If a student is removed for ten days or less, he or she must be afforded the minimal process required by Goss. A jury could find Defendants' unwritten policy makes a mockery of those requirements.

As described by Mr. Waples, Defendants' unwritten policy offers nothing more than a sham process. According to Mr. Waples, the result of the process is predetermined even before the student enters the room – simply because he or she is <u>accused</u> of offensive touching, he or she

---

[5] Because Delaware school districts are governed by local school boards, Del. Code Ann. tit. 14, § 1043, Mr. Waples's testimony in this regard raises a reasonable inference that a final policymaker either enacted or knew about and acquiesced in the policy, see LaVerdure, 324 F.3d at 126 (stating final authority is essential element).

will be issued an out-of-school suspension.[6] Notably, the police's decision whether to arrest the student and the student's denial of the charges play no role in the school's decision to suspend the student, because that decision is already made under the unwritten policy. (Id. at 9-11.) The only factor in that decision is the nature of the allegation. Such a predetermined process does not afford due process. See, e.g., D'Angelo v. Winter, 403 F. App'x 181, 182 (9th Cir. 2010) ("A hearing with a predetermined outcome does not satisfy due process."); Bakalis v. Golembeski, 35 F.3d 318, 326 (7th Cir. 1994) ("Certainly, a body that has prejudged the outcome cannot render a decision that comports with due process."); Washington v. Kirksey, 811 F.2d 561, 564 (11th Cir. 1987) ("Due process of law does not allow the state to deprive an individual of property where the state has gone through the mechanics of providing a hearing, but the hearing is totally devoid of a meaningful opportunity to be heard."); cf. Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989) ("Since the touchstone of the right of due process is freedom from arbitrary governmental action, it is axiomatic that a prison disciplinary hearing in which the result was arbitrarily and adversely predetermined violates this right.") (citation omitted).

Not only could a jury infer this custom violates federal law on its face, the fact that "a lot" of students have been suspended pursuant to this policy since at least 2002 suggests a jury could also reasonably infer the District and Board acted with deliberate indifference to the obvious consequence of depriving their students of the constitutional process recognized in Goss and adopted in their written policy. Finally, there is sufficient evidence to allow a jury to infer that

---

[6] Mr. Waples testified that students are suspended under this policy for "safety" reasons, but there was never any suggestion Wooleyhan posed a continuing or ongoing threat of danger to the School or its process, which would have permitted removal before complying with Goss. See Goss, 419 U.S. at 582-83.

this custom caused Wooleyhan's deprivation, considering he was accused of offensive touching, he received an out-of-school suspension "pending school review," and Mrazeck testified she issued Wooleyhan an "open-ended," non-disciplinary suspension "pending an investigation[ pursuant to the] usual[] practice we follow at the high school." (Sealed App., ECF No. 96, at 291; Pl. School Defs. App., ECF No. 187, at 62-75); see Fletcher, 867 F.2d at 793.

Defendants argue that suspensions pending investigation are common in public schools. But in most of the cases Defendants cite, the schools complied with Goss's requirements and the students either admitted or did not dispute the alleged conduct. See McClain v. Lafayette Cnty. Bd. of Educ., 673 F.2d 106, 107, 110 (5th Cir. 1982) (finding sufficient process after student admitted fault); E.W. v. Wake Cnty. Bd. of Educ., No. 09-198, 2010 WL 1286218, at *3 (E.D.N.C. Mar. 30, 2010) (noting student received requisite due process and had opportunity to offer his side of story, but did not deny participating in fight); Darby v. Schoo, 544 F. Supp. 428, 430 (W.D. Mich. 1982) (noting students admitted fault). In the one case in which the court found a due process violation, the plaintiff-students were suspended for more than ten days and the court was not considering a Monell claim. Darby, 544 F. Supp. at 436 (concluding administrators complied with Goss, but failed to afford due process for suspension beyond scope of Goss). In the final case, the plaintiff-student complained only that the alleged victim was not present at the hearing for cross examination and, again, Goss did not apply because the student was suspended for twenty days. G.C. v. Bristol Twp. Sch. Dist., No. 05-4800, 2006 WL 2345939, at *3-4 (E.D. Pa. Aug. 11, 2006). In G.C., Judge McLaughlin ultimately found no due process violation for a "suspension pending investigation." Id. at *1, 3-4.

In this case, the Court has recognized a genuine dispute of material fact exists regarding

whether Wooleyhan received procedural due process. Further, in none of the preceding cases was there evidence of an unwritten school board or district policy, that had been followed for several years, ensuring an out-of-school suspension under any and all circumstances.

Goss was concerned with the removal of a public school student from school before he was afforded adequate process. However Defendants characterize their action, as "procedural" or "pending review," the result of their custom – mandating out-of-school suspension for any accusation of offensive touching – runs directly counter to the spirit of Goss and due process itself. This is not to say that schools can never suspend pending investigation or review. But where there is a genuine dispute of material fact whether the student received Goss's "rudimentary precautions against . . . arbitrary exclusion," Goss, 419 U.S. at 581, and there is evidence suggesting policymakers have predetermined the result of those basic procedures, schools and their policymakers may run afoul of the Constitution when they issue an out-of-school suspension, regardless of how they characterize it.

### B. Defamation Claim Against White

White invokes two conditional privileges and state law immunity in her request for summary judgment on this claim. Wooleyhan contends the Court has already determined these issues. The Court endeavored to cabin the discovery in this matter into two segments, each of which the Court anticipated would culminate in an opportunity to move for summary judgment. The first segment concerned Wooleyhan's individual capacity claims and resulted in summary judgment for several defendants on various claims. The Court envisioned the second segment would focus primarily on the official capacity claims and would not encompass any remaining individual capacity claims. The Court's most recent procedural order, however, invited summary

judgment "on any issue" by August 12, 2011. (Order, ECF No. 208, ¶ 8(c).) Rather than force White to bear the burden of any unintentional ambiguity, the Court will consider, and deny, her second request for summary judgment on this claim.

First, the Court previously considered and declined to extend state-law immunity to White. (See Summ. J. Memo. at 33 n.17.) Because the Court previously identified a genuine dispute of material fact regarding "whether White lied about witnessing Wooleyhan 'push his elbow out toward' Jester" (id. at 15), a jury must determine whether she acted in good faith or with the requisite degree of fault, see Del. Code Ann. tit. 10, §§ 4001, 4003; see also Vick v. Heller, 512 A.2d 249, 251 (Del. Super. Ct. 1986) (stating plaintiff must prove absence of at least one element of state-law immunity).

Second, her attempts to invoke conditional privileges for her allegedly defamatory remarks fail for the same reason Jester's attempt to invoke a conditional privilege failed. (See Summ. J. Memo. at 44-45.) A conditional privilege may be lost if it is abused by making a statement which the speaker knows is false. Pierce v. Burns, 185 A.2d 477, 479 (Del. 1962). The court determines whether the privilege applies, and the jury resolves contested factual issues of whether the privilege was abused. Id. at 480; Meades v. Wilmington Hous. Auth., No. 376, 2005 WL 1131112, at *2 (Del. May 12, 2005).

The Court previously found there is a dispute of fact as to "whether White lied about witnessing Wooleyhan 'push his elbow out toward' Jester." (Summ. J. Memo. at 15.) If the jury concludes her allegation was knowingly false, it could also conclude she abused the privilege. Therefore, White's request for summary judgment will be denied.

**VI.    Conclusion**

Courts are generally reluctant to insert themselves into schools' disciplinary processes. But in some cases, judicial scrutiny is warranted. In this case, Wooleyhan has raised a genuine dispute of material fact regarding whether he received procedural due process prior to his out-of-school suspension, and he has presented sufficient evidence to allow a jury to reasonably infer the existence of an unconstitutional custom which was the "moving force" behind his alleged constitutional injury. A jury must resolve these issues.

For the foregoing reasons, Defendants' Motion for Summary Judgment will be **denied**. An appropriate Order will follow.

O:\Todd\10-153 Wooleyhan v. Cape Henlopen (DE)\Wooleyhan - 2d MSJ Memo - FINAL.wpd